**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELIZABETH G. OYER,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 25-1555 (CJN) |

**PLAINTIFF'S SECOND SUPPLEMENTAL NOTICE**

Plaintiff Elizabeth Oyer's March 31, 2025 FOIA request sought "[a]ll documentation pertaining to the termination of [her] employment" from April 2022 to March 2025. ECF No. 1, Exh. 4. In her summary judgment filings, Ms. Oyer argued that the Defendant inadequately searched for records regarding then-Deputy Attorney General Todd Blanche's decision to remove her as the Pardon Attorney. ECF No. 21 at 10-22; ECF No. 25 at 1-12. In particular, Ms. Oyer challenged the Defendant's failure to find literally any records responsive to that request.

A critical new claim by Mr. Blanche, made under oath, casts further doubt on the adequacy of Defendant's search and undermines Defendant's explanations for its failure to produce any responsive documents. During the confirmation hearing on his nomination to be Attorney General, Mr. Blanche testified that he removed Ms. Oyer on March 7, 2025 not because on the prior day she had declined to recommend restoration of gun rights to President Trump's friend, the actor Mel Gibson, but instead because of recommendations regarding the

commutations of federal death sentences she had made in memoranda months before during the Biden Administration.

If, as now-Attorney General Blanche claimed under oath, Ms. Oyer's commutation recommendations were indeed the cause of her firing, those memoranda are plainly responsive to Ms. Oyer's FOIA request. More importantly, if Ms. Oyer was terminated for this reason, there must have been records reflecting review of those memos in the Office of the Deputy Attorney General ("ODAG"), and elsewhere in the Department, and the internal deliberations about them which led to her removal.

A reasonable search, therefore, would have led the Department's Office of Information and Privacy ("OIP") to ask ODAG personnel about the reasons for the termination, which, in turn, would have led to learning about the memoranda. OIP inquiries with ODAG would then have uncovered from whom they learned about those memoranda, who in ODAG reviewed and analyzed them, and therefore where to locate the responsive records pertaining to the decision Mr. Blanche has claimed he made. Yet the Defendant performed no such search and, necessarily, produced no such records. The claimed absence of any records relating to Ms. Oyer's termination undermines either OIP's claim that it performed an adequate search or Mr. Blanche's newfound explanation for the termination. They cannot both be true.

The Senate Judiciary Committee held two days of confirmation hearings, on July 15 and 16, 2026, during which Mr. Blanche and Ms. Oyer both testified. On July 15, Mr. Blanche denied that Ms. Oyer's recommendation that the Attorney General reject Mel Gibson's petition for restoration of his gun rights led to her termination. Tr. 1 at 4.10:20 (Gibson "had nothing to

do with why she was fired by the way. Nothing.").[1] *See* Tr. 1 at 4.09:13 (same).[2] Instead, in response to a question from Senator Welch asking why he fired Ms. Oyer, Mr. Blanche made, for the first time,[3] this claim:

> Yes, for a number of reasons.[4] It had nothing to do with Mel Gibson. The decisions that she had made at [sic] pardon attorney in the weeks and months leading up to the end of President Biden's term were completely inconsistent with President Trump's authority, including recommending commuting every single individual on death row, which even President Biden didn't do.

Tr. 1 at 4.09:30.

The Pardon Attorney is a career DOJ employee who reports directly to the Deputy Attorney General.[5] As Ms. Oyer stated when questioned the day after Mr. Blanche testified, near the end of the Biden Administration, she was tasked with drafting memoranda concerning whether the President should commute the death sentences of inmates convicted of federal crimes.[6] She testified that her role as Pardon Attorney entails attempting to apply the priorities

---

[1] Transcripts of the hearing are available at https://www.rev.com/transcripts/blanche-confirmation-day-one ("Tr. 1") and https://www.rev.com/transcripts/blanche-confirmation-day-two ("Tr. 2"). Citations are followed by a time stamp when the testimony occurred.

[2] Questions for the Record (QFR) by Senator Durbin, The Nomination of the Honorable Todd Blanche to be Attorney General of the United States July 17, 2026, https://www.judiciary.senate.gov/imo/media/doc/blanche_-_qfrs.pdf, Question 52(d) at p. 40; QFR by Senator Welch, Question 6 at p.2.

[3] See Tr. 2 at 45:04 (Ms. Oyer stating that this was the first time this explanation for removal was made).

[4] Mr. Blanche here suggests that there were other reasons for Ms. Oyer's removal, but the Department did not search for records pertaining to these reasons.

[5] U.S. DOJ Organizational Chart Map: https://www.justice.gov/agencies/chart/map.

[6] *See, e.g*. Tr. 2 at 40:41, 41:04 (citing executive privilege to decline to discuss contents of memoranda).

of the current Administration, in a principled manner, to the particular issues presented by a given clemency application. Tr. 2 at 1:00:44 – 1:00:54.

Ms. Oyer was called to testify on the second day of Mr. Blanche's confirmation hearings before the Senate Judiciary Committee and testified concerning the circumstances surrounding her dismissal. When Senator Hawley questioned her, he stated that he had one of the memos, dated November 4, 2024, in his possession, and purported to quote from it. Tr. 2 at 54:50. *See also* Statement of Senator Schmidt at Tr. 2 at 1:09:42 (referring to a 73 page memorandum dated November 4, 2024). It would seem obvious that Senator Hawley could only have obtained those documents from the Justice Department.[7] Equally clear is that if, as the Attorney General now claims more than a year after the events in question, Ms. Oyer was in fact dismissed based on those memoranda, then the memoranda and any consideration of them by Mr. Blanche and his office would necessarily be responsive to Mr. Oyer's FOIA request.

In her Declaration, ECF No. 19, OIP official Vanessa Brinkmann explained that:

> To ensure a reasonably thorough records search, during the course of processing a FOIA request, OIP continually assesses potential additional locations or alternative search methods to locate potentially responsive records and will initiate such additional searches as appropriate. OIP holds discussions with persons within the Department knowledgeable about the potential locations of records, and utilizes these discussions to determine where, and to what extent, any potentially responsive records may exist that would not be identified via typical search methodologies. Overall, OIP employs an iterative search methodology that is tailored to the requirements of each individual FOIA request.

Brinkmann Decl. at ¶ 41. *See also* Supplemental Brinkmann Decl. at ¶ 7. ECF No. 23. Thus, in response to the March 31, 2025, FOIA request, the OIP reported that it spoke to knowledgeable people about where to search for responsive records. Brinkmann Decl., ¶ 43. OIP was told that

[7] Senator Hawley also stated that there were also "a series of other memos" that Ms. Oyer authored on the commutation issues. Tr. 2 at 55:02.

ODAG would be the appropriate office to search and that Mr. Blanche would be one of two custodians most likely to have responsive records. *Id*. ODAG is the office to which Ms. Oyer reported.

Taking Mr. Blanche's position, stated under oath, at face-value, OIP's inquiries of the ODAG and Mr. Blanche should have surfaced Ms. Oyer's commutation memoranda as well as records memorializing the discussion of them and subsequent termination because of them. They were squarely among the "documentation pertaining to the termination of [her] employment." *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (requiring agencies to follow "obvious leads to discover requested documents"). The date range of Ms. Oyer's request was for records from April 2022 to March 2025, which would have encompassed the memoranda.

But, as Ms. Oyer has explained in prior submissions, OIP unreasonably and impermissibly narrowed the custodians, search methodology, and date range. If Ms. Oyer's commutation recommendations were the cause of her termination, it stands to reason that other individuals at DOJ, aside from Mr. Blanche and then-Principal Associate Deputy Attorney General Emil Bove, possessed records related to the ODAG's evaluation of Ms. Oyer's writings. How, for example, did Mr. Blanche and Mr. Bove become aware of Ms. Oyer's memos in the first instance? With whom did Mr. Blanche and/or Mr. Bove discuss the contents of the memos?

Mr. Blanche's claim lays bare the flaws of OIP's search methodology. First, it used keywords that are variations of the term "termination," Brinkmann Supp. Decl., ¶ 7, rather than the *reasons* for termination which would have been gleaned from OIP's conversations in ODAG. And a keyword search alone was not the sort of search this FOIA request called for. Since Mr. Blanche claims that Ms. Oyer's writings resulted in her removal, OIP simply needed to search

for the memoranda that officials in the ODAG reviewed and the records of that analysis. Second, it is now clear that OIP arbitrarily ignored Ms. Oyer's date range for the search in a way that would exclude those writings:

> Although Plaintiff's request, as originally submitted to JMD, identifies a starting date of April 2022, OIP processed only Part 3 of Plaintiff's request, seeking records related to the termination of Plaintiff's employment, which took place in March 2025. As such, OIP utilized a starting date range of January 20, 2025 (rather than April 2022), as the termination took place during the current administration and because the two custodians searched were not employed by the Department prior to that date.

Brinkmann Decl., ¶ 43. Using Ms. Oyer's date range would have covered her Biden-era writings.

Even before Mr. Blanche made these belated claims about Ms. Oyer's termination, we had a textbook case in which Mr. Oyer has raised "substantial doubt" concerning the adequacy of the agency's search in view of her "well defined requests and positive indications of overlooked materials." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003). But the Department's claims now make the case overwhelming. These are neither speculative hints nor suggestions of inadequacy. They are founded instead on the sworn testimony before the Senate by the very person who terminated Ms. Oyer, while seeking confirmation to become Attorney General. Because Ms. Oyer has pointed to "evidence that would indicate that at the time the agency searched its files there was reason to believe that the missing documents were in those files . . . the agency must explain those holes in the record, such that the Court is able to ascertain if the agency has explained the absence of the responsive records from the results of the search." *Shapiro v. DOJ*, Civ. No. 16-1263 (RBW), 2025 U.S. Dist. LEXIS 232027, *69 (D.D.C. Nov. 25, 2025) (cleaned up). The Department has not—and cannot—do so and thus its motion for summary judgment with respect to the March 31 request must be denied and Ms. Oyer's cross-motion for summary judgment granted.

Dated: August 28, 2026

Respectfully Submitted,

*/s/ Jeffrey S. Gutman*
Jeffrey S. Gutman, PLLC
(D.C. Bar #416954)
1712 Hobart St., N.W.
Washington, D.C. 20009
Tel.: (202) 631-5129
jsgutmandc@gmail.com

_*/s/ David W. Ogden*___________
David W. Ogden (D.C. Bar #375951)
Joshua G. Kolb (#NY0628)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave., S.E., #15180
Washington, D.C. 20003
Tel: (202) 594-9958
david@democracydefenders.org
joshua@democracydefenders.org

Attorneys for Plaintiff